# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, Office of : 
Attorney General, by Attorney General : 
Michelle Henry : 
 : 
 : 
v. : No. 861 C.D. 2023
 : ARGUED: May 23, 2024
Gillece Services, LP, d/b/a Gillece : 
Plumbing, Heating, Cooling, and Electrical, : 
Inc., Gillece Plumbing and Heating, Inc., : 
Rooter-Medic, Electric Medic, Gillece : 
Plumbing and Heating, Inc., Thomas J. : 
Gillece, individually and as Owner of : 
Gillece Services, L.P., Gillece Energy, L.P., : 
and Gillece Plumbing and Heating, Inc., : 
James F. Hackwelder, individually and as : 
Field Supervisor for Gillece Services, L.P., : 
and Joseph Nikoula, individually and as : 
Field Supervisor for Gillece Services, L.P. : 
 : 
 : 
Appeal of: Gillece Services, LP, Gillece : 
Plumbing and Heating, Inc., and Thomas : 
J. Gillece : 


BEFORE:  HONORABLE MICHAEL H. WOJCIK, Judge
 HONORABLE MATTHEW S. WOLF, Judge
 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION BY**
**SENIOR JUDGE LEADBETTER**                          **FILED: July 3, 2024**

　　　　This case concerns an issue of first impression: whether the Home

Improvement Consumer Protection Act[1] (HICPA) requires a home improvement

---

[1] Act of October 17, 2008, P.L. 1645, *as amended*, 73 P.S. §§ 517.1 – 517.19.

contractor to honor a cancellation request from a customer that is not made in writing—that is, whether the written notice requirement of the Unfair Trade Practices and Consumer Protection Law[2] (UTPCPL) applies to HICPA. Gillece Services, LP, Gillece Plumbing and Heating, Inc., and Thomas J. Gillece[3] (Contractors), a group of home improvement businesses and their majority owner, appeal from the order of the Court of Common Pleas of Allegheny County granting permanent injunctive relief[4] requiring Contractors to honor requests for rescission made verbally or by any other medium. We affirm.

The relevant history of the case is as follows. Appellee, Commonwealth of Pennsylvania, Office of Attorney General, initiated this case pursuant to Section 4 of the UTPCPL, 73 P.S. § 201-4,[5] to enjoin what it believed were prohibited business practices. In its complaint, the Commonwealth alleged that

---

[2] Act of December 17, 1968, P.L. 1224, *as amended*, 73 P.S. §§ 201-1 – 201.10.

[3] Gillece Services, LP is a domestic limited partnership and registered home improvement contractor. Gillece Plumbing and Heating, Inc. is a general partner and minority owner of Gillece Services, LP. Thomas J. Gillece is the President and majority owner/shareholder of both entities and manages their day-to-day operations. The remaining defendants indicated through counsel that they have no interest in the outcome of the appeal under Rule 908 of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 908.

[4] Although other matters (civil penalties, costs, and restitution) remain to be resolved at trial, the trial court's interlocutory order is immediately appealable as of right under Rule 311(a)(4) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 311(a)(4), because the trial court granted permanent injunctive relief.

[5] Whenever the Attorney General "has reason to believe that any person is using . . . any method, act[,] or practice declared [by the UTPCPL] to be unlawful, and that proceedings would be in the public interest, [s]he may bring an action in the name of the Commonwealth against such person to restrain by . . . permanent injunction the use of such method, act[,] or practice." 73 P.S. § 201-4. As a violation of HICPA is deemed a violation of the UTPCPL, *see* Section 10 of HICPA, 73 P.S. § 517.10, the Attorney General would have enforcement authority.

Contractors, *inter alia*, rejected timely efforts to cancel home improvement contracts (Count III).[6] After the case had progressed through discovery and production of expert opinions, the Commonwealth filed a motion for partial summary judgment.[7] The filings attendant to the motion establish that Contractors would receive phone calls from customers seeking to cancel home improvement contracts and, despite such notice, would proceed to send crews to the customers' properties and attempt to commence work, refusing to honor the attempt at cancellation unless and until a signed notice was given to their employee or received at Contractors' offices.

After hearing arguments, the trial court entered an order granting a permanent injunction with respect to the acts and practices alleged in Count III. The trial court found that Contractors had refused to honor customer requests to cancel home improvement contracts unless those requests were made in writing and hand-delivered to Contractors' employee or corporate offices; had penalized customers to cancel by entering their properties without permission and commencing work; had failed to disclose that Contractors did not honor verbal cancellation requests; had failed to refund all payments within ten business days of receipt of notice of cancellation; and had misrepresented to a customer that his deposit was non-refundable because he had not signed an emergency work authorization. (Trial Ct. Order, ¶ 4.) On appeal, Contractors do not dispute these findings.

The trial court concluded that Contractors violated Section 7(b) of HICPA, 73 P.S. § 517.7(b), by refusing to permit customers who signed a home improvement contract the ability to rescind those contracts within three business

---

[6] Other counts for which summary judgment were granted were engaging in deceptive advertising (Count IV) and making materially false and/or misleading statements and/or omissions about the basis for Contractors' pricing (Count VI).

[7] An earlier partial summary judgment motion was denied.

3

days and penalizing customers who rescinded their contracts; violated Section 7(a) of the UTPCPL, 73 P.S. § 201-7(a), by refusing to permit customers who signed a home improvement contract the ability to rescind their contract within three business days; violated Section 7(f) of UTPCPL, 73 P.S. § 201-7(f), by misrepresenting to customers their right to cancel their contracts; violated Section 7(g) of UTPCPL, 73 P.S. § 201-7(g), by failing to refund all payments made under a contract which a homeowner had validly canceled; and violated Section 7(j.1) of UTPCPL, 73 P.S. § 201-7(j.1), by misrepresenting to customers that their deposit was non-refundable without their signing an emergency work authorization. (Trial Ct. Order, ¶ 5).

Pursuant to Section 4 of the UTPCPL, 73 P.S. § 201-4, the trial court entered permanent injunctive relief,[8] the following portion of which is appealed by Contractors:

> A. [Contractors] shall permit customers to rescind their home improvement contracts without penalty within three (3) business days of the date of signing, regardless of the medium used by the customer to provide actual notice of cancellation;
>
> B. [Contractors] shall permit customer to rescind within three (3) business days of the date of signing any contract for goods or services having a sale price of twenty-five dollars ($25) or more contracted to be sold at the buyer's residence;
>
> C. [Contractors] shall not misrepresent in any manner a customer's right to cancel a home improvement contract;
>
> D. [Contractors] shall refund within ten (10) business days all payments made under a contract or sale which was rescinded by the customer within three (3) business days of the date of signing.

---

[8] *See supra* n.5.

(Trial Ct. Order, ¶ 16.A - D.)

Contractors filed the instant appeal and the trial court, after issuing an order directing the filing of a concise statement of errors complained of on appeal, issued an opinion in support of its order under Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(a). On appeal, Contractors present various permutations of the sole substantive issue in the case,[9] which may be distilled as follows: whether the trial court erred in construing HICPA not to require written notice to cancel home improvement contracts.

We have carefully reviewed the trial court's opinion issued pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), and believe that it ably addresses this issue. Therefore, we adopt the opinion of the trial court in *Commonwealth of Pennsylvania, Office of Attorney General v. Gillece Services, LP* (C.C.P. Allegheny,

---

[9] The question of waiver, listed as Issue 1 by Contractors, arises because the trial court stated in its Rule 1925(a) opinion as follows:

> [Contractors] notably do not contest the injunctive relief described at [¶ 16.]E-G [of the trial court's order], which relate to Counts IV and VI; only the relief granted as to Count III is contested. Even then, [Contractors] do not purport [that] it was improper for this [c]ourt to grant injunctive relief as to Count III; rather, their claims are narrowly focused on what could essentially be described as the "scope" of the relief granted. Therefore, pursuant to this [c]ourt's August 15, 2023 Order and Pa.R.A.P. 1925(b)(4)(vii), arguments related to these issues are waived.

(Trial Ct. Op. at 7 n.4.) It is, as Contractors argue, unclear as to what issues the trial court deemed to have been waived. Nonetheless, the trial court fully dealt with the merits of the issues raised by Contractors in their brief to this Court, and we find no waiver relating to those arguments.

No. GD-20-009374, filed September 22, 2023) (appended hereto), and affirm.

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, Office of : 
Attorney General, by Attorney General : 
Michelle Henry :
:
           v. :     No. 861 C.D. 2023
:
Gillece Services, LP, d/b/a Gillece : 
Plumbing, Heating, Cooling, and Electrical, : 
Inc., Gillece Plumbing and Heating, Inc., : 
Rooter-Medic, Electric Medic, Gillece : 
Plumbing and Heating, Inc., Thomas J. : 
Gillece, individually and as Owner of : 
Gillece Services, L.P., Gillece Energy, L.P., : 
and Gillece Plumbing and Heating, Inc., : 
James F. Hackwelder, individually and as : 
Field Supervisor for Gillece Services, L.P., : 
and Joseph Nikoula, individually and as : 
Field Supervisor for Gillece Services, L.P. :
:
Appeal of: Gillece Services, LP, Gillece : 
Plumbing and Heating, Inc., and Thomas : 
J. Gillece :

# **O R D E R**

AND NOW, this 3rd day of July, 2024, the order of the Court of Common Pleas of Allegheny County granting the motion for partial summary judgment is hereby AFFIRMED.

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,
OFFICE OF ATTORNEY GENERAL,
By Attorney General Josh Shapiro,

        Plaintiff,

        v.

GILLECE SERVICES, LP, d/b/a GILLECE
PLUMBING, HEATING, COOLING, AND
ELECTRICAL, INC., GILLECE PLUMBING
AND HEATING, INC., ROOTER-MEDIC,
and ELECTRIC MEDIC, GILLECE
PLUMBING AND HEATING, INC.;

THOMAS J. GILLECE, Individually and as
Owner of GILLECE SERVICES, L.P.,
GILLECE ENERGY, L.P., and GILLECE
PLUMBING AND HEATING, INC.;

JAMES F. HACKWELDER, Individually and
as Field Supervisor for Gillece Services, L.P.;
and

JOSEPH NIKOULA, Individually and as Field
Supervisor for Gillece Services, L.P.,

        Defendants.

**CIVIL DIVISION**

No.: GD 20-009374

HON. CHRISTINE WARD
**OPINION**

*Counsel for Appellants*
John Linkosky, Esq.
Pa. I.D. No. 46436
Linkosky & Associates
715 Washington Avenue
Carnegie, PA 15106

*Counsel for Plaintiff-Appellee*
Jill T. Ambrose, Esq.
Pa. I.D. No. 323549
Office of Attorney General
1251 Waterfront Place.
Mezzanine Level
Pittsburgh, PA 15222

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,
OFFICE OF ATTORNEY GENERAL,
By Attorney General Josh Shapiro,

          Plaintiff,

          v.

GILLECE SERVICES, LP, d/b/a GILLECE
PLUMBING, HEATING, COOLING, AND
ELECTRICAL, INC., GILLECE PLUMBING
AND HEATING, INC., ROOTER-MEDIC,
and ELECTRIC MEDIC, GILLECE
PLUMBING AND HEATING, INC.;

THOMAS J. GILLECE, Individually and as
Owner of GILLECE SERVICES, L.P.,
GILLECE ENERGY, L.P., and GILLECE
PLUMBING AND HEATING, INC.;

JAMES F. HACKWELDER, Individually and
as Field Supervisor for Gillece Services, L.P.;
and

JOSEPH NIKOULA, Individually and as Field
Supervisor for Gillece Services, L.P.,

          Defendants.

**CIVIL DIVISION**

No.: GD 20-009374

HON. CHRISTINE WARD
**CIVIL DIVISION**

## OPINION

## I.    THE PARTIES.

Defendant Gillece Services, LP is a domestic limited partnership and registered home improvement contractor. Defendant Gillece Plumbing and Heating, Inc. is a general partner and minority owner of Defendant Gillece Services, LP (collectively, the "Corporate Defendants"). Defendant Thomas J. Gillece (hereinafter, "Gillece") is the President and majority owner/shareholder of both the Corporate Defendants. Gillece also manages the day-to-day

1

operations of the Corporate Defendants. Defendants may collectively be referred to as the "Gillece Defendants".

Plaintiff is the Pennsylvania Office of Attorney General, which brought this action against the Defendants pursuant to 73 P.S. § 201-4 in order to enjoin what it argued were prohibited business practices.

## II. PROCEDURAL HISTORY AND FACTUAL BACKGROUND.

73 P.S. § 201-4, a subsection of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (CPL)[1] provides that:

> Whenever the Attorney General or a District Attorney has reason to believe that any person is using or is about to use any method, act or practice declared by section 3 of this act to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the Commonwealth against such person to restrain by temporary or permanent injunction the use of such method, act or practice.

By incorporating 73 P.S. § 201-2(4)(i)-(xxi), 73 P.S. § 201-3 renders several specific "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful. 73 P.S. § 201-3(a). The Home Improvement Consumer Protection Act (HICPA)[2] establishes additional consumer safeguards for transactions involving Home Improvement Contracts, which are notably distinct from typical sales/services contracts.[3] The

---

[1] 73 P.S. § 201-1, *et seq.*

[2] 73 P.S. § 517-1, *et seq.*

[3] Home Improvement Contracts are distinct from the sales/services contracts covered by the CPL in several ways. First, Home Improvement Contracts concern a vastly narrower suite of transactions, as they are specifically "agreement[s] between a contractor, subcontractor or salesperson and an owner for the performance of a **home improvement** which includes all agreements for labor, services and materials to be furnished and performed under the contract." 73 P.S. § 517.2 (emphasis added). A "home improvement" is defined as, inter alia, any "[r]epair, replacement, remodeling, demolition, removal, renovation, installation, alteration, conversion,

2

HICPA functions much like an expansion upon the CPL: Violations of the HICPA are treated as violations of the CPL, and no provision of the HICPA precludes any right a consumer may have under the CPL. 73 P.S. § 517-10.

On September 1, 2020, Plaintiff filed a Complaint against the Gillece Defendants seeking to enjoin perceived violations of the above provisions. Plaintiff's Complaint alleged that the following acts by the Defendants constituted violations of either the CPL or HICPA: Misrepresenting the Need for Repairs and/or Replacements (Count I); Using High Pressure Sales and Scare Tactics (Count II); Rejecting Timely Efforts to Cancel Contracts (Count III); Deceptive Advertising (Count IV); Performing Home Improvement Projects and/or Contracts in a Shoddy, Unworkmanlike Manner and/or Failing to Honor Express Warranties (Count V); Making Materially False and/or Misleading Statements and/or Omissions about the Basis for Defendants' Pricing (Count VI); and Failing to Provide Copies of Home Improvement Contracts and Attached Notices of Cancellation at the Time of Sale or Execution (Count VII). In response, the Gillece Defendants filed preliminary objections on September 22, 2020, which were overruled by this Court on December 4, 2020. The Gillece Defendants then filed an Answer to the Complaint and New Matter on December 24, 2020. Discovery formally began shortly thereafter.

---

modernization, improvement, rehabilitation or sandblasting" done in connection with a private residence, and "for which the total cash price of all work agreed upon between the contractor and owner is more than $500." *Id.* In comparison, the CPL is applicable to virtually any contract for any good or service worth twenty-five dollars ($25) or more. *Id.* at 201-7(a). Second, a Home Improvement Contract must be written and signed to be valid and enforceable. *See Id.* at 517-7(a). The CPL makes no reference to any such writing requirements being applicable to sales/services contracts. Third, there are several protections extended to consumers involved in Home Improvement Contracts that simply do not exist for consumers in sales/services contracts; these include, inter alia, the presence of certain terms rendering Home Improvement Contracts automatically voidable by the consumer (*see Id.* at 517-7(e)), requiring contractors to maintain certain licenses and register with administrative authorities (*see Id.* at 517-3), and a specialized complaint mechanism that allows the consumer to draw upon a contractor's letter of credit (*see Id.* at 517-9(10)(iii)).

3

On September 27, 2021, Plaintiff filed a Motion for Partial Summary Judgement, seeking the entry of permanent injunctive relief as to Count IV. The Gillece Defendants responded on October 27, 2021, urging this Court to deny summary judgment due the potential relevance of additional depositions and expert testimony. This Court agreed that additional discovery was warranted and denied the Plaintiff's motion on January 11, 2022.

On April 3, 2023, after extensive discovery and the production of several expert opinions, Plaintiff filed a new, vastly expanded Motion for Partial Summary Judgement. This motion sought dismissal of the Gillece Defendant's affirmative defenses and the entry of permanent injunctive relief as to Counts III, IV, VI, and VII. This Court heard arguments as to the Motion on July 11, 2023, and subsequently entered an Order partially granting it on August 1, 2023. The Order dismissed the Gillece Defendants' affirmative defenses and entered permanent injunctive relief as to Counts III, IV, and VI. The permanent injunctive relief granted by this Court provided as follows:

A.  [The Gillece Defendants] shall permit customers to rescind their home improvement contracts without penalty within three (3) business days of the date of signing, regardless of the medium used by the customer to provide actual notice of cancellation;

B.  [The Gillece Defendants] shall permit customer to rescind within three (3) business days of the date of signing any contract for goods or services having a sale price of twenty-five dollars ($25) or more contracted to be sold at the buyer's residence;

C.  [The Gillece Defendants] shall not misrepresent in any manner a customer's right to cancel a home improvement contract;

D.  [The Gillece Defendants] shall refund within ten (10) business days all payments made under a contract or sale which was rescinded by the customer within three (3) business days of the date of signing.

4

E.   [The Gillece Defendants] shall not misrepresent to any customer that their deposit is nonrefundable unless that customer has executed a valid emergency work authorization form under the circumstances of a bona fide emergency;

F.   [The Gillece Defendants] shall clearly and conspicuously disclose all material terms and restrictions on offers in advertisements; and

G.   [The Gillece Defendants] shall not misrepresent that Gillece is prohibited by law from charging consumers on the basis of parts and labor, that Gillece is prohibited by law from providing itemized invoices, or that Gillece is mandated by law to use flat-rate pricing.

August 1, 2023 Order, ¶ 16.  The Gillece Defendants filed a notice of appeal shortly after the Order was issued on August 3, 2023.  On August 15, 2023, this Court issued an order directing the Gillece Defendants to file a Concise Statement of Errors Complained of on Appeal ("Concise Statement") within 21 days of that order.  On August 31, 2023, the Gillece Defendants timely filed their Concise Statement.

## III.   ERRORS COMPLAINED OF ON APPEAL.

The Gillece Defendants argue that the following constitute either abuses of discretion or reversible errors of law:

i.   [D]irecting Gillece to permit customers to rescind their Home Improvement Contracts, **regardless of the medium used by the customer to provide actual notice of cancellation,** where the express terms of the [CPL] require a recission or cancellation of a Home Improvement Contract to be made by the consumer notifying, in writing, the seller within three (3) full business days following the day on which the contract or sale was made and by returning or holding available for return to the seller, in its original condition, any merchandise received under the contract or sale;

ii.   [D]irecting the Gillece Defendants to permit customers to rescind their Home Improvement Contracts, **regardless of the medium used by the customer to provide actual notice of cancellation,** where the [CPL] requires that to cancel a transaction, the consumer

5

must mail or deliver a signed and dated copy of the cancellation notice or any other written notice, or send a telegram, to the seller;

iii. [D]irecting [the] Gillece Defendants to permit customers to rescind their Home Improvement Contracts, verbally, either in person or over the telephone, when the [CPL] requires the customer provide **written** notice of the cancellation and states the manner in which written notice must be delivered;

iv. [D]irecting that [the] Gillece Defendants shall permit customers to rescind Home Improvement Contracts verbally, in person or over the telephone;

v. [D]irecting that [the] Gillece Defendants refund within ten (10) business days all payments made under a contract or sale which was rescinded by the customer within three (3) business days of the date of signing, without regard to the statutory requirement that the customer return or hold available for return to the seller, in its original condition, any merchandise received under the contract or sale and by requiring Gillece to refund payments upon verbal cancellation of a Home Improvement Contract, both of which are contrary to law;

vi. [H]olding [the] Gillece Defendants to a standard not contained in the applicable statutes governing consumer recission or cancellation of Home Improvement Contracts; [and]

vii. [D]enying the Gillece Defendants equal protection of the laws.

Concise Statement, ¶ 10 (emphasis in original).

## IV. DISCUSSION.

### a. This Court did not err by directing the Gillece Defendants to accept non-written notice of Home Improvement Contract cancellation.

The Gillece Defendants' first six alleged errors are functionally a single argument pertaining to standing and statutory interpretation. As mentioned above, the action that gives rise to this appeal is enabled by 73 P.S. § 201-4, which establishes Plaintiff's standing to pursue the

6

temporary/permanent injunction of conduct that violates the CPL. Since the statute only gives Plaintiff standing to enjoin conduct that violates the CPL, it follows that Plaintiff does not have standing to pursue—and therefore cannot be granted—injunctive relief as to conduct the CPL does not prohibit. The Gillece Defendants, presumably relying on the above reasoning, essentially claim that certain portions of this Court's permanent injunctive relief are invalid for lack of standing because they enjoin conduct that is not unlawful under the CPL.

Specifically, the Gillece Defendants argue that the injunctive relief described at A-D is problematic insofar as it requires Gillece to accept non-written notice for Home Improvement Contract cancellation.[4] *Id.*, ¶¶ 5-7, 10. This argument is wholly predicated on an assertion that the CPL only requires Home Improvement Contract cancellation where consumers provide written notice of their intent to cancel. *Id.*, ¶ 10(a)-(f). The Gillece Defendants extrapolate from this assertion that it is not illegal to refuse to cancel Home Improvement Contracts where consumers provide notice in another form. *Id.* Thus, the Gillece Defendants conclude that Plaintiff did not have the standing to receive the injunctive relief insofar as it requires Home Improvement Contracts be cancelled "regardless of the medium used by the customer to provide actual notice of cancellation." *Id.*

The Superior Court should not acknowledge this argument because its predicating assertion—i.e., that the CPL requires written notice to cancel Home Improvement Contracts—is patently incorrect. Rather, principals of statutory interpretation support the conclusion that the

---

[4] The Gillece Defendants notably **do not** contest the injunctive relief described at E-G, which relate to Counts IV and VI; only the relief granted as to Count III is contested. Even then, the Gillece Defendants **do not** purport it was improper for this Court to grant injunctive relief as to Count III; rather, their claims are narrowly focused on what could essentially be described as the "scope" of the relief granted. Therefore, pursuant to this Court's August 15, 2023 Order and Pa.R.A.P. 1925(b)(4)(vii), arguments related to these issues are waived.

7

notice necessary for cancelling Home Improvement Contracts has no formal requirements,[5] precisely as the August 1, 2023 Order provides.

When interpreting statutes, "the objective … is to ascertain and effectuate the intention of the legislature." *Bayada Nurses v. Dept. of Labor and Indus.*, 8 A.3d 866, 880 (Pa. 2010) (citing 1 Pa.C.S. § 1921(a)). "Generally, the best indication of the General Assembly's intent is the plain language of the statute." *Allstate Life Ins. Co. v. Commonwealth*, 52 A.3d 1077, 1080 (Pa. 2012). "When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent." *Chanceford Aviation v. Chanceford Twp. Bd. of Supervisors*, 923 A.2d 1099, 1104 (2007) (citations omitted). Courts look beyond the statutory text to discern legislative intent "only when [the] statutory text is determined to be ambiguous." *A.S. v. Pennsylvania State Police*, 143 A.3d 896, 903 (Pa. 2016). When it proves necessary to look beyond the statutory text to ascertain legislative intent, courts are guided by several considerations; "[s]uch considerations include, inter alia, the occasion and necessity for the statute, the mischief to be remedied, the consequences of a particular interpretation, and the contemporaneous legislative history." *Harmon v. Unemployment Compensation Board of Review*, 207 A.3d 292, 304 (Pa. 2019) (citation omitted).

There are two statutory provisions that are relevant to this appeal: 73 P.S. § 201-7 and 73 P.S. § 517-7(b). 73 P.S. § 201-7 is the subsection of the CPL that likely serves as the basis for the Gillece Defendants' assertion. This is because Section 201-7 is the portion of the CPL that

---

[5] "Formal," as that term is used here and throughout the discussion, is an adjective referring to "established procedural rules, customs, and practices." Black's Law Dictionary (11th ed. 2019), formal. "Formal" or "Form" requirements then are those procedural or customary necessities for an act or submission to be deemed effective and enforceable, such as the state in which notice must be given (i.e., written or otherwise) or the degree to which a contract or contractual provision must be written.

8

concerns consumers' right to rescind sales/services contracts and contains the exact written notice requirement described by the Gillece Defendants: "Where goods or services having a sale price of twenty-five dollars ($25) or more are sold or contracted to be sold to a buyer, ... that consumer may avoid the contract or sale by notifying, **in writing**, the seller within three full business days following the day on which the contract or sale was made[.]" 73 P.S. § 201-7(a) (emphasis added); *compare with* Concise Statement, ¶ 10(a)-(e).

73 P.S. § 517-7(b), on the other hand, is a similar provision found within the HICPA that specifically pertains to the consumer's right to rescind Home Improvement Contracts—the subject matter of this dispute. This provision controls where Home Improvement Contracts are concerned because, as mentioned above, the HICPA is essentially an expansion upon the CPL. *See supra.* at p. 2-3; *see also Freeman v. Akiladelphia Creative Contracting, LLC*, 2023 WL 5944622 at 2 (Pa. Super. Ct. 2023) (holding the HICPA governs if the dispute concerns "an agreement 'for the performance of a home improvement' where Appellants are 'contractor[s]' and Appellee is an 'owner' of a private residence"). Accordingly, the Gillece Defendants' assertion is substantively that Section 517-7(b) contains the same written notice requirement as Section 201-7.

Like Section 201-7, Section 517-7(b) permits consumers to rescind Home Improvement Contracts within three business days of the date of signing. Unlike Section 201-7, however, Section 517-7(b) makes no mention of any form requirements for the provision of notice:

> An individual signing a home improvement contract, except as provided in the emergency provisions of [Section 201-7], shall be permitted to rescind the contract without penalty regardless of where the contract was signed, within three business days of the date of signing.

73 P.S. § 517-7(b). Generally, in the absence of contractual or statutory provisions to the contrary, any "positive and unequivocal act ... indicating unmistakably" the consumer's intention to no

9

longer be bound is sufficient to effectuate notice of contract cancellation—"no particular form of notice is necessary." *Pomenrantz v. Mutual Fire Ins. Co. of Chester Cnty.*, 124 A. 139, 140 (Pa. 1924); *see also Federal Kemper Ins. Co. v. Com., Ins. Dept.*, 500 A.2d 796 (Pa. 1985) (holding consumer had given notice of insurance contract cancellation because their "knowing nonpayment" of insurance premiums constituted an "overt act" indicating their intent to cancel). Accordingly, Section 517-7(b) facially requires contractors cancel Home Improvement Contracts "regardless of the medium used by the customer to provide actual notice of cancellation." August 1, 2023 Order, ¶ 16(A).

The Gillece Defendants' assertion that Section 517-7(b) provides for the same written notice requirements as Section 201-7 could only be true if Section 517-7(b) impliedly incorporated the Section 201-7 requirements. There is no indication, whether in the statutory text or otherwise, that the General Assembly intended the Section 201-7 written notice requirements be applicable to Section 517-7(b). To the contrary, every indication suggests the General Assembly intended those requirements would not apply to Section 517-7(b).

First, it is readily apparent from provisions like 73 P.S. §§ 517-9(10)(iii)(b) and 517-10, which both contain express references to CPL provisions, that the legislators could cite CPL requirements with specificity where they considered them applicable to the HICPA. That Section 517-7(b) makes no reference to the written notice requirements contained at Section 201-7(a) therefore suggests those requirements are inapplicable. *See Woodford v. Com., Ins. Dept.*, 243 A.3d 60, 74-75 (Pa. 2020) ("although one is admonished to listen attentively to what a statute says; one must also listen attentively to what it does not say"). Moreover, Section 517-7(b)'s reference to Section 201-7's emergency provisions,[6] which is phrased as the sole exception to Section 517-

---

[6] 73 P.S. § 201-7(j.1)-(j.2).

7(b)'s rule of general applicability, suggests that other limitations or exceptions to the rule were not contemplated by the legislators.

Second, the absence of written notice requirements for consumer contract recission and cancellation is in line with the HICPA's policy of expanding consumer protections. *See Mid-Atl. Sys. of WPA, Inc. v. Tax Office of Monroeville*, 204 A.3d 579, 588 (Pa. Commw. Ct. 2019) (The "HICPA was enacted ... with the purpose of protecting consumers from a variety of fraudulent and deceptive practices by home improvement contractors"). Allowing Home Improvement Contracts to be cancelled through overt act, as opposed to requiring written notice, increases consumer protections by reducing the formalities imposed upon consumers.

Third, the absence of written notice requirements for consumer contract recission and cancellation is in line with similar expansions upon CPL protections for specific subtypes of contracts. In insurance contracts, for instance, the General Assembly has repeatedly allowed consumers to give notice of contract cancellation through overt act. *See* 40 P.S. § 991.2002(c)(2) (the insured may effectuate automobile insurance policy cancellation if he "demonstrate[s] by some overt action to the insurer or its agent that he wishes the policy to be cancelled or that he does not wish the policy to be renewed"); *see also* 40 P.S. § 1171.5(c)(2) (overt acts are similarly sufficient to effectuate the cancellation of residential and personal property insurance policies). Like with Home Improvement Contracts, the statutory provisions described above were put in place by the legislators to protect consumers from unfair and deceptive practices employed by certain commercial actors (*see Id.* at §§ 1171.2, 1171.5(a)); an arm of the state is empowered to enjoin those unfair and deceptive practices (*see Id.* at § 1171.10); and the contractors involved in such transactions must register with a state administrative authority (*see Id.* at § 991.1404). These

11

similarities all suggest the HICPA employs an overt act notice standard for the consumer recission of Home Improvement Contracts.

In the absence of an implicit incorporation of Section 201-7's writing requirements, the duties imposed upon the Gillece Defendants by Section 517-7(b) are quite clear. Section 517-7(b) provides that consumers "shall be permitted" to rescind Home Improvement Contracts within three days of signing—aside from the emergency provisions, there are no caveats or limitations placed upon that right. No aspect of the provision suggests that contractors may modify or limit this right on their own initiative, such as by requiring written notice through contractual provisions. Rather, a plain reading of Section 517-7(b) indicates that contractors like the Gillece Defendants must cancel Home Improvement Contracts when a customer gives notice of cancellation within three days of signing, "regardless of the medium used by the customer to provide actual notice of cancellation." August 1, 2023 Order, ¶ 16(A). This Court did not err in ordering to that effect.

b. **This Court did not err by directing the Gillece Defendants to issue refunds on sales/services contracts without explicitly making mention of Section 201-7's writing and return requirements.**

The Gillece Defendants' fifth alleged error merits a brief separate discussion. This is because, while the injunctive relief described at D and the alleged error could pertain to Home Improvement Contracts covered by the HICPA, in which case the argument above sufficiently addresses the allegation, they could also apply to sales/services contracts covered by the CPL. Insofar as contracts governed by the CPL are concerned, the Gillece Defendants are correct that the law only requires them to issue refunds where they receive written notice of cancellation and the customer "return[s] or hold[s] available for return ..., in its original condition, any merchandise received under the contract or sale." Concise Statement, ¶ 16(e); *see also* 73 P.S. §

12

201-7(a). This Court's Order does not run afoul of those requirements, however, because it only requires refunds once a contract has been properly rescinded.

It is apparent from the conditional language in Section 201-7 that recission is conditioned upon the customer providing written notice of cancellation and returning or holding out for return any merchandise received:

> [A] consumer **may avoid** the contract or sale **by notifying**, in writing, the seller within three full business days following the day on which the contract or sale was made **and by returning** or holding available for return to the seller, in its original condition, any merchandise received under the contract or sale.

73 P.S. § 201-7(a) (emphasis added). Therefore, by requiring a contract be rescinded for the refund obligation to take effect, the August 1, 2023 Order tacitly includes the requirements that the Gillece Defendants complain are lacking. There is no error in this Court ordering as it did.

### c. This Court did not deny the Gillece Defendant equal protection of the laws.

It is unclear precisely what the Gillece Defendants' seventh alleged error refers to. That said, this Court does recall that the Gillece Defendants' presented a selective prosecution defense at argument, which this Court ultimately found to be unpersuasive. "[S]elective prosecution is a complete defense to a charge of criminal conduct, in which the accused bears the burden of pleading the existence of the elements of the events." *Commonwealth v. Kane*, 188 A.3d 1217, 1230 (Pa. Super. Ct. 2018). A prima facie showing of selective prosecution entails some discussion of equal protection, so it is possible that the seventh error refers to this Court's decision on that subject. Presuming this is the case, this Court did not err in denying the selective prosecution defense because the Gillece Defendants did not meet their burden, after extensive discovery, of showing vindictive prosecution.

13

In order to establish a prima facie case of selective prosecution, a party must establish two things:

> [F]irst, that others similarly situated were not prosecuted for similar conduct, and, second, that the Commonwealth's discriminatory prosecutorial selection was based on impermissible grounds such as race, religion, the exercise of some constitutional right, or any other such arbitrary classification. The burden is on the defense to establish the claim; it is error to shift the burden to the prosecution to establish or refute the claim. Because of the doctrine of separation of power, the courts will not lightly interfere with an executive's decision of whom to prosecute.

*Commonwealth v. Murphy*, 795 A.2d 997, 1000 (Pa. Super. 2002) (internal citations omitted). The Gillece Defendants baldly asserted at argument that the Plaintiff had failed to prosecute other contractors who were committing similar violations of the CPL and HICPA. The Gillece Defendants offered no evidence, however, tending to show these violations were actually occurring or that the Plaintiff was aware of them. Additionally, even presuming the Gillece Defendants' allegations are accurate, no evidence was presented to support the assertion that prosecution was based on impermissible grounds. Rather, Plaintiff supplied an eminently reasonable and permissible basis for why it may investigate and prosecute one entity over another: i.e., complaints lodged by consumers. This Court's denial of the selective prosecution argument was justified and free of any equal protection violations.

## V.    CONCLUSION.

In light of the aforementioned reasons, this Court's August 1, 2023 Order partially granting Plaintiff's Motion for Partial Summary Judgement should be affirmed.

BY THE COURT:

_____, J.
Hon. Christine A. Ward

14